UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> U.S. Attorney's Office <br> 555 Fourth Street, NW <br> Washington, DC 20530, <br><br> Plaintiff, <br><br> v. <br><br> $429,900.00 OF BLOCKED FUNDS <br> ASSOCIATED WITH RYER <br> INTERNATIONAL TRADING, LTD., <br><br> $501,771.00 OF FUNDS ASSOCIATED <br> WITH AN EB-5 ACCOUNT, <br><br>  - and - <br><br> $24,209.85 OF FUNDS ASSOCIATED <br> WITH TANG XIN AND LI XICHUN <br><br> Defendants In Rem | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 20-cv-2546<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff, the United States of America, by and through the United States

Attorney for the District of Columbia, and brings this verified complaint for forfeiture in a civil

action *in rem* against $429,900.00 associated with Ryer International Trading, Ltd. ("Ryer"),

which are currently held in a blocked funds account at Bank 1 ("Defendant Funds 1"), $501,771.00

associated with Tang Xin's and Li Xichun EB-5 Account, ("EB-5 Account"), which funds the

government previously seized ("Defendant Funds 2"), and $24,209.85 associated with Defendant

Xin Tang and Li Xichun, which funds the government previously seized ("Defendant Funds 3")

(collectively the "Defendant Funds") and alleges as follows:

## NATURE OF ACTION AND THE PARTIES

1.      This action arises out of an investigation by the Federal Bureau of Investigation ("FBI") of a scheme by North Korean banks sanctioned by the U.S. Department of the Treasury to launder U.S. dollars through the United States on behalf of sanctioned entities in the Democratic People's Republic of Korea ("DPRK" or "North Korea").

2.      As described in detail below, sanctioned North Korean state-run banks have used a host of front companies in order to access the U.S. financial system and evade the U.S. sanctions imposed on these banks and their sanctioned affiliates.

3.      Additionally, companies that contract with North Korean entities, or make arrangements to receive funds from sanctioned state-run banks, frequently set up their own front companies to receive funds related to North Korean contracts.

4.      This action relates to U.S. dollar transfers by Ryer and Rensy International Trading Co., Ltd. ("Rensy"), which acted as an intermediary for ZTE (defined below) and other known North Korean financial facilitators.

5.      These transfers were in violation of the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701, *et seq.*, the conspiracy statute, codified at 18 U.S.C. § 371, and the federal money laundering statute, codified at 18 U.S.C. § 1956(a)(2)(A), (h).

6.      The Defendant Funds are subject to forfeiture pursuant to: 18 U.S.C. §§ 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b)(2) because the acts and omissions giving rise to the forfeiture took place in the District of Columbia.  The

Defendant Funds are currently held in a bank account in the United States. The Defendant Entities and co-conspirators failed to seek or obtain licenses from the Department of the Treasury's ("Treasury's") Office of Foreign Asset Control ("OFAC"), which is located in Washington, D.C., to conduct transactions through the United States for which licenses were required under United States law.

9.      ZTE Corporation ("ZTE") is headquartered in Shenzhen, China. ZTE is one of the largest smartphone manufacturers in Asia. As detailed herein, ZTE purposefully directed its illicit actions towards the United States by routing funds through bank accounts located in the United States.

10.     Ryer is a corporation purportedly headquartered in Shanghai, China. As detailed herein, Ryer purposefully directed its illicit actions towards the United States by routing funds through bank accounts located in the United States.

11.     Rensy is a corporation purportedly headquartered in Shanghai, China. As detailed herein, Rensy purposefully directed its illicit actions towards the United States by routing funds through bank accounts located in the United States.

## FACTUAL ALLEGATIONS

## I.      ZTE SCHEME TO AVOID U.S. SANCTIONS

12.     On March 7, 2017, ZTE agreed to enter a guilty plea for conspiring to violate IEEPA. ZTE simultaneously reached settlement agreements with the U.S. Department of Commerce and OFAC. In total, ZTE agreed to pay the U.S. government $892,360,064.00 in fines for its sanction violations.

13.     ZTE documents, which are available to the public, substantiate that ZTE exported controlled items to North Korea for which it received payments in U.S. dollars via a series of shell companies.

14.     Sanctions heavily restrict the ability of North Korean banks and trade companies to access the international financial system and to obtain certain U.S.-origin products. Prior investigations have uncovered schemes by North Korean banks and trade companies to partner with non-North Korean nationals in establishing front companies for the purpose of opening dollar-denominated bank accounts and obtaining U.S.-origin products.

15.     The investigation has revealed that the total value of ZTE's contracts for products for the benefit of North Korea was $328 million between 2010 and April 27, 2016.  At least 478 million U.S.-origin parts were exported via ZTE to North Korea during that time. The U.S.-origin items exported by ZTE required export license from the Departments of Commerce and Treasury in Washington, D.C., however, ZTE sought no such licenses.

16.     Based on information provided by ZTE, most of the telecommunications equipment exported to North Korea consisted of fixed-line telecommunications systems and mobile phones. Most contracts completed between ZTE and North Korea serviced the Korea Posts and Telecommunications Company ("KPTC"), a North Korean, state-owned telecommunications company.

17.     Based on information provided by ZTE, its business model forbade direct contact with North Korean customers. North Korean customers utilized China-based front companies to negotiate purchase contracts, which ZTE then fulfilled, bypassing sanctions by using the front companies as intermediaries to request payment and receive the U.S.-origin goods.

18.     According to ZTE, these China-based front companies included: Ryer and Rensy.

19.     Approximately one month after the addition of ZTE to the Commerce denied entities list, ZTE sent letters to Ryer and Rensy terminating all business relations and contracts between them. ZTE terminated this relationship as part of its corporate remediation.

4

## II.     RYER INTERNATIONAL TRADING LTD.

20.     Ryer is registered in Hong Kong, with its primary place of business in Shanghai. According to information provided by ZTE, Hong Kong corporate registration records, and U.S.-travel records, Tang Xin was the legal representative for Ryer.

21.     The records further reveal that Li Xichun was Tang Xin's husband. Li Xichun has listed his employer in these documents as Ryer, and described his duties as "being in charge of the company's overall operation and management."

22.     Li Xichun was previously employed by ZTE as a sales manager between January 1, 2005, and March 31, 2009.  Li Xichun was the North Korean accounts manager for ZTE and signed contracts involving North Korean customers on behalf of ZTE.

23.     On or about May 22, 2007, ZTE assigned Li Xichun to ZTE's office in North Korea.

24.     Between November 1, 2010, and July 13, 2015, Ryer, on behalf of KPTC, sent 19 U.S. dollar wire payments which transited through the United States totaling approximately $7,759,888.12 to ZTE.  North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of FTB, funded Ryer to make these U.S. dollar payments to ZTE.  No OFAC license was sought or obtained for such payments.

25.     According to documents provided by ZTE, Li Xichun signed as the representative for Ryer on contracts between Ryer and ZTE. Ryer negotiated these contracts on behalf of KPTC.

26.     According to these contracts, Ryer was responsible for complying with all export control regulations of the European Union ("E.U.") and the United States. Further, it was Ryer's responsibility to check and guarantee there would be no infringement of an embargo imposed by the E.U, United States, or United Nations.

5

### III.   RENSY INTERNATIONAL TRADING CO., LTD.

27.     Shanghai Rengxi International Trading Co., Ltd. ("Shanghai Rengxi") was another company used by ZTE to effectuate trade with North Korea.  Shanghai Rengxi was incorporated in Shenzhen, China.

28.     According to the Hong Kong Companies Registry, Rensy is the Hong Kong branch of Shanghai Rengxi.

29.     Companies often use an English transliterated name when incorporating their Chinese companies.  In this case, the transliteration of "Rengxi," pronounced "Ren-see," would be spelled "Rensy."

### IV.   RYER AND RENSY ARE AFFILIATED FRONT COMPANIES

30.     Ryer and Rensy shared multiple common Shanghai, China-based addresses and phone numbers.

31.     Li Xichun utilized an email account that was hosted on Rensy's Chinese domain.

32.     Tang Xin utilized a Hong Kong-based auditors to review Ryer's accounts.  In or about January 2015, Tang Xin directed the Hong Kong-based auditors to direct any questions regarding Ryer's accounting information to a Rensy employee, thus demonstrating the connection between Ryer and Rensy.

33.     Shanghai Rengxi registered the Rensy Chinese domain.

34.     Between April 1, 2015, and May 3, 2016, Ryer laundered approximately 23 payments totaling approximately $6,921,065.88 to Rensy, which transited through the United States. North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of FTB, funded Ryer to make these U.S. dollar payments to Rensy.  No OFAC license was sought or obtained for such payments.

35.     On or about May 3, 2016, a payment in the amount of $429,900 (Defendant Funds 1) originated by Ryer for the benefit of Rensy, was blocked by the U.S. correspondent bank due to the nexus to North Korean sanction violations.

## V.     NORTH KOREA'S USE OF FRONT COMPANIES TO FACILITATE ILLICIT U.S. DOLLAR PAYMENTS

36.     Ryer received payments totaling approximately $12,412,223.08 from numerous documented North Korean financial facilitators, several of which are detailed below.

### A.     **Dandong Zhicheng Metallic Materials Co., Limited ("Dandong Zhicheng")**

37.     On August 22, 2017, OFAC designated Dandong Zhicheng.  The designation noted that Dandong Zhicheng specialized in the import, export, and transport of steel and anthracite coal, and it had worked with a number of U.S.-designated entities, including the UN-designated Koryo Credit Development Bank and Korea Ocean Shipping Agency.  Dandong Zhicheng allegedly used the foreign exchange received from the end users of North Korean coal to purchase other items for North Korea, including nuclear and missile components.  A related forfeiture complaint noted that Dandong Zhicheng laundered over $700 million using a network of its own front companies.

38.     Between April 2014 and September 2014, Dandong Zhicheng and a related front company sent 18 wires totaling $6,691,826.89 to Ryer.  These payments were made while Ryer, on behalf of KPTC, was making payments to ZTE.  North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of FTB, funded Dandong Zhicheng and a related front company to make these U.S. dollar payments to Ryer, who in turn paid ZTE.

39.     In this instance, the North Korean government would send North Korean anthracite coal to Dandong Zhicheng, which Dandong Zhicheng sold to customers worldwide. Dandong Zhicheng, in turn, would use the proceeds of the coal sales to wire U.S. dollar payments to Ryer.

7

Ryer in turn would wire those funds to ZTE, often weeks later. Ryer would then cause the shipment of the ZTE cell phones to North Korea.

B.      **Dandong Hongxiang Industrial Development Co., Ltd. Network**

40.      On September 26, 2016, OFAC designated Dandong Hongxiang Industrial Development Co., Ltd. ("DHID") for acting for or on behalf of Korea Kwangson Banking Corporation ("KKBC"). The United States and U.N. previously designated KKBC for providing financial services in support of WMD proliferators.

41.      A Department of Justice complaint identified Good Field Trading Company ("Good Field") as a DHID front company.

42.      Between May 29, 2014, and November 20, 2014, Ryer received seven payments from Good Field totaling $1,105,627.54. These payments were made while Ryer, on behalf KPTC, was making payments to ZTE. North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of KKBC, funded Good Field to make these U.S. dollar payments to Ryer, who in turn paid ZTE.

C.      **Mingzheng International Trading Limited ("Mingzheng")**

43.      On March 11, 2013, OFAC designated North Korea's Foreign Trade Bank, and on August 22, 2017, OFAC designated Mingzheng for acting as a front company for FTB.

44.      Mingzheng sent six wire transfers totaling approximately $1,782,894.46 to Ryer between August 2014 and August 2015. These payments were made while Ryer, on behalf KPTC, was making payments to ZTE. North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of FTB, funded Mingzheng to make these U.S. dollar payments to Ryer, who in turn paid ZTE. No OFAC license was sought or obtained for such payments.

D.      **Mansudae Overseas Projects**

45.     On August 22, 2017, OFAC designated the Mansudae Overseas Projects ("MOP") group of companies. In December 2016, OFAC designated MOP's parent organization for having engaged in, facilitated, or been responsible for the exportation of workers from North Korea, including exportation to generate revenue for the Government of North Korea or the Workers' Party of Korea.

46.     Between November 4, 2010 and March 19, 2015, Ryer received 12 payments totaling approximately $2,831,874.19 from a MOP company. These payments were made while Ryer, on behalf KPTC, was making payments to ZTE.  North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of FTB, funded MOP to make these U.S. dollar payments to Ryer, who in turn paid ZTE.  No OFAC license was sought or obtained for such payments.

## VI.    PAYMENT REQUESTS FROM RENSY TO NORTH KOREAN BANKS

47.     In mid-2014, Li Xichun made at least two requests to the FTB representative in Shenyang, China to transfer U.S. dollars to the KKBC representative in Dandong, China. Both FTB and KKBC were designated at this time. Specifically:

a.      in June 2014, Li Xichun requested the FTB representative transfer $300,000 to the KKBC representative; and

b.      in July 2014, Li Xichun requested the same FTB representative transfer $200,000 to the same KKBC representative.

48.     These two requests by Li Xichun were made on Rensy letterhead. Further, each request was stamped with a company seal bearing the name Rensy.

**VII.   TANG XIN USED PROCEEDS FROM RYER TO FUND EB-5 INVESTMENT**

49.     In 2012, Tang Xin and Li Xichun applied for EB-5 investment visas. As a requirement of the application, Tang Xin sent $500,000.00, which later accrued interest, (Defendant Funds 2) to a commercial enterprise in the United States.

50.     EB-5 records indicate that Li Xichun had previously been employed by ZTE.

51.     EB-5 records additionally indicate that both Li Xichun and Tang Xin began employment under Ryer in 2009, after which it became their sole source of income.

**VIII.  TANG XIN ACCESSED U.S. BANKS TO LAUNDER MONEY FOR RYER**

52.     In 2013, Tang Xin opened personal checking and savings accounts with U.S. banks.

53.     On or about September 3, 2013, Tang Xin opened a U.S. bank account on behalf of Ryer Investment LLC.

54.     Between October 2013 and October 2015, approximately $2,414,600.00 was wired from Ryer's overseas accounts to these U.S.-based accounts held by Tang Xin and Li Xichun. North Korean financial facilitators, who were paid by sanctioned North Korean banks, including for the benefit of FTB, funded Ryer's overseas accounts to make these U.S. dollar payments to Ryer Investment LLC.  No OFAC license was sought or obtained for such payments.

55.     The U.S government seized the balance of these accounts which totaled $24,209.85 (Defendant Funds 3).

**IX.    SUMMARY OF FACTS GIVING RISE TO FORFEITURE**

56.     The opaque U.S. dollar transactions by the Ryer and Rensy promoted IEEPA and bank fraud violations.

57.     The proceeds of the Ryer/Rensy scheme to facilitate the shipment of prohibited goods, including ZTE telecommunications products containing U.S.-origin components ultimately benefitted the North Korean Government and KPTC, in violation of U.S. sanctions.

58.      Ryer and Rensy defrauded financial institutions by making their transactions appear to be divorced from the true beneficiary, the North Korea entities.

59.      These transactions and this scheme was managed and perpetrated by Tang Xin and Li Xichun and involved the Defendant Funds.

## COUNT ONE -- FORFEITURE
(18 U.S.C. § 981(a)(1)(C))

60.      The United States incorporates by reference the allegations set forth in Paragraphs 1 to 59 as if fully set forth herein.

61.      Ryer and Rensy, and others, known and unknown, acted individually and conspired together to conduct the above identified illegal procurements and payments in violation of IEEPA, 50 U.S.C. § 1705.

62.      As such, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to substantive violations of IEEPA and a conspiracy to violate IEEPA.

## COUNT TWO -- FORFEITURE
(18 U.S.C. § 981(a)(1)(A))

63.      The United States incorporates by reference the allegations set forth in Paragraphs 1 to 59 above as if fully set forth herein.

64.      Ryer and Rensy acted individually and together to transmit and transfer the Defendant Funds to a place inside the United States from or through a place outside the United States, with the intent to promote the carrying on of violations of the penalties section of IEEPA, and 18 U.S.C. § 1344 (relating to bank fraud), in violation of 18 U.S.C. § 1956(a)(2)(A)).

65.      Ryer and Rensy, and others, known and unknown, conspired together to commit a violation of 18 U.S.C. §§ 1956(a)(2)(A), in violation of 18 U.S.C. § 1956(h).

66.     As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. § 1956(a)(2)(A) and (h), or as any property traceable to such property.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays as follows:

A.     that notice issue on Defendant Property 1, Defendant Property 2 and Defendant Property 3 as described above;

B.     that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

C.     that a warrant of arrest *in rem* issue according to law;

D.     that judgment be entered declaring that Defendant Property 1, Defendant Property 2 and Defendant Property 3 be forfeited to the United States of America for disposition according to law; and

E.     that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: September 11, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

By:      _____/s/ Michael Grady_____
ZIA M. FARUQUI, D.C. Bar No. 494990
MICHAEL P. GRADY
BRIAN P. HUDAK
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7566 (main line)

*Attorneys for the United States of America*

12

## <u>VERIFICATION</u>

I, Christopher Wong, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 11th day of September, 2020.


_____*/s/ Christopher Wong*_____
Christopher Wong
Special Agent
Federal Bureau of Investigation


I, Thomas Tamsi, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 11th day of September, 2020.


_____*/s/ Tommy Tamsi*_____
Special Agent Thomas Tamsi
Homeland Security Investigations

**CIVIL COVER SHEET**

JS-44 (Rev. 5/12 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America<br>c/o U.S. Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, D.C. 20530 ⊞ | $429,900.00 of Blocked Funds Associated With Ryer International Trading, Ltd., $501,771.00 of Funds Associated With an EB-5 Account, and $24,209.85 of Funds Associated With Tang Xin and Li Xichun ⊞ |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Michael P. Grady (202) 252-7566<br>Assistant United States Attorney<br>555 4th Street, N.W.,  11th Floor<br>Washington, DC 20530 | |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

⦿ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in This State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

**Any nature of suit from any category may be selected for this category of case assignment.**

***(If Antitrust, then A governs)***

⦿ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☒ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 400 State  Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization

☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

○ **G.** *Habeas Corpus/ 2255*

☐ 530 Habeas Corpus – General
☐ 510 Motion/Vacate Sentence
☐ 463 Habeas Corpus – Alien Detainee

○ **H.** *Employment Discrimination*

☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)

*(If pro se, select this deck)*

○ **I.** *FOIA/Privacy Act*

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions (if Privacy Act)

*(If pro se, select this deck)*

○ **J.** *Student Loan*

☐ 152 Recovery of Defaulted Student Loan (excluding veterans)

○ **K.** *Labor/ERISA (non-employment)*

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 740 Labor Railway Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

⦿ **L.** *Other Civil Rights (non-employment)*

☐ 441 Voting (if not Voting Rights Act)
☐ 443 Housing/Accommodations
☐ 440 Other Civil Rights
☐ 445 Americans w/Disabilities – Employment
☐ 446 Americans w/Disabilities – Other
☐ 448 Education

○ **M.** *Contract*

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholder's Suits
☐ 190 Other Contracts
☐ 195 Contract Product Liability
☐ 196 Franchise

○ **N.** *Three-Judge Court*

☐ 441 Civil Rights – Voting (if Voting Rights Act)

## V. ORIGIN

⦿ 1 Original Proceeding
○ 2 Remand from State Court
○ 3 Remanded from Appellate Court
○ 4 Reinstated or Reopened
○ 5 Transferred from another district (specify)
○ 6 Multi-district Litigation
○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

18 U.S.C. § 1956(a)(2)(A), (h) money laundering; 18 U.S.C. §§ 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A) civil forfeiture

**VII. REQUESTED IN COMPLAINT** — CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 ☐   DEMAND $ _____   JURY DEMAND: _____   Check YES only if demanded in complaint   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY** — (See instruction)   YES ☐   NO ☒   If yes, please complete related case form

DATE: 9/11/2020   SIGNATURE OF ATTORNEY OF RECORD /s/ Michael P. Grady

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.